IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VIVIAN ALLEN,                                    06-CV-1251-BR

          Plaintiff,                             OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.


TIM WILBORN
Wilborn Law Office, P.C.
19093 S. Beavercreek Road, PMB # 314
Oregon City, OR 97045
(503) 632-1120

          Attorney for Plaintiff

KAREN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1024


1  -  OPINION AND ORDER

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**CAROL A. HOCH**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2684

       Attorneys for Defendant

**BROWN, Judge.**

     Plaintiff Vivian Allen seeks judicial review of a final decision of the Commissioner of the Social Security Commission in which he denied her application for Supplemental Security Income (SSI) payments under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 1383(c)(3).

     Following a review of the record, the Court **REVERSES** the Commissioner's decision and **REMANDS** for further proceedings.

## BACKGROUND

     Allen was age 48 on the date of the Commissioner's decision. She completed the eighth grade and worked in the past as a janitor, housekeeper, and production worker.  She last worked in October 1999.  Tr. 70, 71, 76.[1]

---

    [1] "Tr." refers to the official transcript of the administrative record filed by the Commissioner.

2  -  OPINION AND ORDER

In her application for SSI, Allen alleged disability due to head injuries, mental illness, hepatitis B and C, and swelling in her feet and legs.  Tr. 70.  Her application has a constructive filing date of April 12, 2002.  Tr. 63.  She cannot recover payments for any period of disability before that date.  *See* 20 C.F.R. §§ 416.203, 416.501.  *See also* Social Security Ruling (SSR) 83-20.

## BURDEN OF PROOF

The claimant has the burden of establishing disability. *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999).  *See also Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, she must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The burden shifts to the Commissioner only when an adjudication proceeds to the final step of the five-step sequential analysis described in 20 C.F.R. § 416.920 in which the Commissioner must show a significant number of jobs exist in the national economy that the claimant can do.  *Bowen v. Yuckert,* 482 U.S. 137, 141-42 (1987).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

If substantial evidence can reasonably support either affirming or reversing the Commissioner's decision, the court may not substitute its judgment for that of the Commissioner. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1192 (9th Cir.  2004). The Commissioner's decision must be upheld even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## ALJ'S FINDINGS

To determine disability, the ALJ applied the five-step sequential procedure described in 20 C.F.R. § 416.920.  *See Yuckert,* 482 U.S. at 140.  Allen challenges the ALJ's evaluation of the evidence and findings at Steps Three and Five of the decision-making sequence.

4  -  OPINION AND ORDER

At Step Three, the regulations require a conclusive presumption of disability if the ALJ determines the claimant's impairments meet or equal any "of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 US at 140-41. *See also* 20 C.F.R. § 416.920(d). The criteria of the listed impairments (Listings) are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).

Here the ALJ found Allen was disabled by a combination of mental impairments and drug and alcohol dependence that satisfied the criteria in the Listing of Impairments for Listings 12.04 *Affective Disorders*, 12.08 *Personality Disorders,* and 12.09 *Substance Addiction Disorders*.

A claimant, however, cannot be found disabled if drug addiction or alcoholism is a contributing factor material to the determination of disability. 42 U.S.C. § 1382c(a)(3)(J). *See also Bustamante v. Massanari,* 262 F.3d 949, 955 (9th Cir. 2001). Drug or alcohol addiction are "contributing material factors" when the claimant's remaining limitations would not be disabling if the claimant stopped using drugs or alcohol. 20 C.F.R. § 416.935(b).

The ALJ found Allen's impairments would not satisfy any section of the Listing of Impairments if the effects of alcohol and drug abuse were excluded. Thus, the ALJ concluded alcohol

and drug addiction were material factors contributing to the
disability determination at Step Three.  The ALJ, therefore,
excluded the impact of substance dependence from the rest of the
decision-making sequence used to determine whether Allen is
disabled.

To make findings at Step Five, an ALJ must evaluate the
claimant's RFC.  A claimant's RFC is an assessment of the
sustained, work-related activities that a claimant can still do
despite the limitations imposed by her impairments.  20 C.F.R.
§§ 416.920(e), 416.945.  *See also* SSR 96-8p.

The ALJ assessed Allen's RFC as follows:

> The claimant has the residual functional
> capacity for a limited range of light
> exertion work activities when alcoholism with
> abuse is not a factor in her limitations.
> She is able to lift and carry up to 20 pounds
> occasionally and 10 pounds frequently.  She
> is able to stand and walk up to six hours in
> a workday.  She is able to sit up to six
> hours in a workday.  She is able to fre-
> quently climb stairs, but is restricted to
> occasional climbing of ladders or scaffolds.
> Due to mental disorders (other than alcohol
> abuse), she is restricted to simple, routine,
> repetitive work with little public contact.

Tr. 25.

If the ALJ reaches Step Five, he must determine
whether the claimant is able to do any work in the national
economy.  *Yuckert*, 482 U.S. at 141-42.  *See also* 20 C.F.R.

§ 416.920(e),(f).  The Commissioner must then show a significant number of jobs exist in the national economy that the claimant can do.  *Yuckert*, 482 U.S. at 141-42.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(f)(1).

Here the ALJ determined Allen would not be disabled and could perform work in the national economy if she stopped using drugs and alcohol.  The ALJ received testimony from a vocational expert (VE) who identified examples of such work to include assembly-production worker, cleaner/housekeeper, and electronics worker.  The ALJ, therefore, concluded at Step Five that Allen was ineligible for SSI payments under Title XVI of the Social Security Act.

## DISCUSSION

Allen contends the ALJ erred by (1) failing to find her disabled at Step Three on the basis that her impairments meet or equal Listing 12.05 *Mental Retardation*, (2) failing to assess her RFC accurately because he excluded limitations in mental function identified by state-agency reviewing psychologists, (3) relying on erroneous VE testimony that identified occupations requiring work activities precluded by her RFC.

I.    **Listing 12.05 *Mental Retardation*.**

Allen contends the ALJ should have found her disabled at
Step Three because her impairments meet and/or equal the criteria
in paragraph C of Listing 12.05 *Mental Retardation*.  The claimant
bears the burden to establish that she meets or equals the
criteria of a Listing.  *Sullivan v. Zebley,* 493 U.S. 521, 531
(1990).  *See also Tackett v. Apfel,* 180 F.3d at 1100;
20 C.F.R. § 416.926.

Listing 12.05 contains an introductory paragraph with the
diagnostic description of mental retardation and four alternative
sets of criteria in paragraphs A-D.  To meet the criteria of
Listing 12.05, a claimant must show her impairments satisfy the
diagnostic description in the introductory paragraph and any one
of the four sets of criteria.  Listing of Impairments § 12.00(A).
The introductory paragraph describes mental retardation as
significantly subaverage general intellectual functioning with
deficits in adaptive functioning.  In addition, the evidence must
support onset before age 22.  Paragraph C requires a claimant to
show a valid verbal, performance, or full-scale IQ of 60-70 and a
physical or other mental impairment that imposes an additional
and significant work-related limitation in function.

Allen relies on paragraph C.  To support her position, Allen
cites the psychological evaluation of Donna Wicher, Ph.D.,
performed in April 2004.  Tr. 650-59.  Dr. Wicher administered a

8  -  OPINION AND ORDER

battery of psychological measures, including intelligence tests on which Allen achieved a verbal IQ score of 66, a performance IQ score of 78, and a full-scale IQ of 69.  Tr. 653.  Allen asserts the combination of her IQ scores and her other severe impairments meets the criteria for the Listing.

Dr. Wicher found Allen's adaptive functioning exceeded that which would be consistent with mental retardation.  Dr. Wicher opined despite test scores at the upper end of the mild mental retardation range, Allen's "overall level of adaptive functioning does suggest that her functioning is actually within the Borderline Range of intellectual ability."  Tr. 656.  The Court concludes, however, Dr. Wicher's evaluation does not satisfy the diagnostic description in the introductory paragraph or the criteria of paragraph C.

Psychological evaluations conducted by other doctors yielded conclusions similar to those of Dr. Wicher.  For example, Jeff Guardalabene, Psy.D., obtained a full-scale IQ of 69, but he concluded other measures of Allen's ability and her adaptive functioning showed that she functioned at the Borderline range of intellectual function.  Tr. 478.  An evaluation by Katie Ugolini, Ph.D., did not reveal any deficits in registration, language, or construction.  Allen was able to correctly follow a three-step command and track simple and complex ideational material without significant difficulty, and her recent and remote memory appeared

9  -  OPINION AND ORDER

to be intact.  Dr. Ugolini opined Allen "functions within the low-average range of intellectual abilities."  Tr. 487.

The ALJ relied on these evaluations when he concluded Allen "demonstrated better adaptive functioning and has better concentration and memory function than a person with mild retardation."  Tr. 22.  In addition, the evidence does not support or negate onset prior to age 22.  Allen reported leaving school after being expelled for fighting during the ninth grade. She did not attend special-education classes and was not held back a grade.  Tr. 76, 485.  The record does not reflect whether her failure to complete school resulted from intellectual deficits, substance addiction, the unfortunate history of sexual and physical abuse that she suffered during her youth, or other causes.

With respect to the criteria in paragraph C, Allen's attorney overstates the record when he asserts "the ALJ has accepted that Plaintiff's IQ scores as obtained through Dr. Wicher's testing are valid."  Pl.'s Opening Br. 12.  In fact, neither Dr. Wicher nor the ALJ accepted the IQ scores as valid measures of Allen's intellectual functioning.  Dr. Wicher observed Allen scored considerably higher on memory testing than would be consistent with the IQ scores she achieved.  Allen also demonstrated better concentration and pace than a person with mild mental retardation and did not exhibit limitations in daily

activities consistent with intellectual functioning in the
mentally-retarded range.  Tr. 22, 657.  In fact, Dr. Wicher
opined "Ms. Allen is of somewhat modest intellectual functioning,
but her level of intelligence is sufficient to allow her to
work."  Tr. 657.  Allen's personality profile also added doubt to
the validity of her testing.  Dr. Wicher opined Allen's testing
most likely reflected her attempt to exaggerate her psychological
deficits.  Tr. 654.  Moreover, Dr. Wicher diagnosed Allen's
intellectual functioning at the Borderline level, which indicates
Dr. Wicher did not accept the IQ test scores as a valid
indication that Allen has mild mental retardation.  *See* Tr. 656.
The ALJ accepted Dr. Wicher's assessment and found Allen
demonstrated greater intellectual functioning than a person
with mild mental retardation.  Tr. 22.

    Allen relies on the evaluation administered in August 2000
by Caleb Burns, Ph.D.  Allen achieved IQ scores in the 50s, which
is well within the mentally retarded range, but Dr. Burns found
these scores "very suspiciously low."  Tr. 197-98.  He did not
believe they were valid because Allen gave poor effort and
smelled of alcohol.  Tr. 197-98.  The ALJ reviewed Dr. Burns's
findings, but he gave greater weight to the assessments of
Drs. Wicher, Guardalabene, and Ugolini because they had greater
knowledge of Allen's alcohol dependence.

Tr. 19, 21.  The Court does not find any error in the ALJ's
evaluation of Dr. Burns's report.

In summary, Allen failed to meet the requirements of Listing
12.05 because she did not satisfy the diagnostic description in
the introductory paragraph or produce IQ scores in the requisite
range that were accepted by evaluators as valid.  Although her
scores during Dr. Burns's evaluation and the lowest scores she
achieved during Dr. Wicher's evaluation were in the requisite
range, Drs. Burns and Wicher opined the scores did not accurately
measure Allen's true intellectual functioning.

Alternatively, Allen argues the ALJ failed to properly
consider whether her combined impairments are medically
equivalent to Listing 12.05.  At 20 C.F.R. § 416.926(b), the
regulations set out three ways to establish medical equivalence,
but Allen does not indicate which method she satisfies.  Instead
Allen merely reasserts that her findings meet the criteria of
Listing 12.05.

Under the first of the three methods, if a claimant has an
impairment described in the Listing of Impairments but does not
exhibit all of the required findings at the required level of
severity, the claimant can establish medical equivalence by
showing other findings at least of equal medical significance to
the required criteria.  20 C.F.R. § 416.926(b)(1).  For example,
in the absence of a valid IQ test score, the claimant could

12 -  OPINION AND ORDER

substitute another reliable measure of intellectual function of equal medical significance. Allen does not satisfy this method because all of the findings suggest her intellectual functioning exceeds the level required for the Listing. The only exception relates to alcohol addiction and drug abuse, which, as noted, cannot be the basis for her disability.

The second method pertains to impairments not described in the Listing of Impairments and does not apply to Allen's assertion that she has mild mental retardation. *See* 20 C.F.R. § 416.926(b)(2).

Under the third method, if a claimant has a combination of impairments but does not exhibit all of the required findings for any Listing, the claimant can establish medical equivalence by comparing her findings to the required findings for closely analogous Listings. 20 C.F.R. § 416.926(b)(2). If Allen invokes the third method, the most closely analogous Listing is 12.05. Again, however, the findings in the record demonstrate her intellectual function exceeds mild mental retardation.

Allen also contends the ALJ's opinion was cursory, and he failed to explain adequately why Allen's impairments do not equal a Listing. As noted, the ALJ relied primarily on the opinion of Dr. Wicher and found Allen had demonstrated better adaptive functioning, concentration, and memory than a person with mild mental retardation and had sufficient intellectual ability to

13 - OPINION AND ORDER

work.  Tr. 22.  Thus, in the absence of a plausible theory as to
how Allen's impairments satisfied one of the three methods of
showing medical equivalence pursuant to 20 C.F.R. § 416.926(b),
the ALJ's explanation was sufficient.  See *Lewis v. Apfel*, 236
F.3d 503, 514 (9th Cir. 2001)(ALJ's failure to compare findings
to a Listing was not error when claimant did not assert any
theory as to how his combined impairments medically equaled the
Listing).

Based on the foregoing, the Court finds substantial evidence
in the record to support the ALJ's conclusion that Allen's
impairments do not meet or equal the criteria for Listing 12.05
and that the ALJ applied correct legal standards in his Step-
Three determination.  Allen's argument relies on a different
interpretation of the evidence, but this Court is not free to
substitute an alternative interpretation for that of the
Commissioner.  *See Batson*, 359 F.3d at 1190.  *See also Andrews*,
53 F.3d at 1039-40.

**II.  RFC Assessment.**

Allen contends the ALJ erred by failing to explain the
weight he gave to the opinion of Dick Wimmers, Ph.D., and Dorothy
Anderson, Ph.D.  Drs. Wimmers and Anderson reviewed Allen's
medical records and assessed her mental residual functional
capacity, but they did not treat or examine her.

14 -  OPINION AND ORDER

In August 2002, Dr. Wimmers opined Allen's social
functioning was moderately limited in her ability to get along
with coworkers or peers without distracting them or exhibiting
behavioral extremes.  Tr. 494-95.  Dr. Anderson affirmed this
finding in January 2003.  Tr. 495.  The ALJ did not reflect this
finding in his RFC assessment and did not include it in the
hypothetical given to the VE.  Tr. 25, 816.

The Commissioner relies on psychological consultants to
make findings of fact about the nature of a claimant's
impairments and the severity of the functional limitations they
impose.  20 C.F.R. § 416.927(f).  *See also* SSR 96-6p.  Such
reviewing sources do not treat or examine the claimant.  Thus,
their opinions are held to stricter standards and are given
weight only to the extent that they are supported by the record
and consistent with the record as a whole.  SSR 96-6p.  The ALJ
is not bound by the findings of reviewing consultants, but he may
not ignore their opinions and must explain the weight given to
their opinions.  *Id.*

The ALJ stated he had considered the opinions of non-
examining medical sources, including state-agency doctors, but he
chose to give greater weight to the assessments of Drs. Wicher,
Guardalabene, and Ugolini.  Tr. 21.  The assessments of
Drs. Guardalabene and Ugolini, however, predated the assessment
of the agency psychologists and were available to them for

15 -  OPINION AND ORDER

review.  Presumably Drs. Wimmers and Anderson weighed these
assessments when they determined Allen's limitations.
Dr. Guardalabene did not address Allen's social deficits in his
evaluation.  Tr. 470-78.  Although Dr. Ugolini did not mention
Allen's social difficulties directly, she found Allen experienced
hypervigilance, anger dyscontrol, heightened irritability, and
exaggerated startle response.  Tr. 480.  These findings do not
discredit the conclusion that Allen has difficulty working
closely with coworkers.  Thus, the ALJ's reliance on the
evaluations of Drs. Guardalabene and Ugolini does not explain why
the ALJ did not give any weight to the agency psychologists'
opinion that Allen required limited close contact with coworkers.

    Dr. Wicher administered her evaluation after Drs. Wimmers
and Anderson reported their findings.  The ALJ reasonably
concluded Dr. Wicher had greater knowledge of Allen's alcohol
dependence and the benefit of evaluating Allen during a period
of sobriety.  Tr. 21.  Be that as it may, Dr. Wicher's opinion
does not contradict the findings of Drs. Wimmers and Anderson.
Dr. Wicher concluded a primary psychological barrier to Allen's
sustained employability was "moderate deficits in social
functioning due to her tendency to avoid people and get into
fights on occasion."  Tr. 657.  Dr. Wicher further stated Allen
has shown a "history of interpersonal conflict with some physical
altercations and . . . a tendency to isolate from others."

Tr. 658.

Again, the ALJ's reliance on Dr. Wicher's assessment does
not explain why the ALJ did not give any weight to the finding
that Allen required work with limited close contact to coworkers.

The Commissioner argues the ALJ's omission was harmless
error and that it is unlikely the inclusion of those limitations
would have changed the VE's testimony.  The Commissioner also
asserts the jobs identified by the VE do not require significant
interaction with people.  The Commissioner relies on the
numerical codes for occupations listed in the Department of Labor
publication *Dictionary of Occupational Titles* (DOT).  The
Commissioner explains the DOT codes for occupations include a
digit to express the complexity of the required relationships
with people in the given occupation.  The codes for the three
occupations identified by the VE indicate the least complicated
relationships with people.

The Court does not agree the DOT codes adequately replace
the testimony of a VE.  There are only two ways for the
Commissioner to satisfy his burden at Step Five:  (1) by
eliciting testimony from a VE based on a hypothetical question
that accurately reflects all of the claimant's limitations or
(2) by referring to the Medical-Vocational Guidelines at 20
C.F.R. Part 404, Subpart P, Appendix 2.  *Tackett v. Apfel,* 180
F.3d at 1100-01.  *See also Andrews v. Shalala,* 53 F.3d at 1043.

17 -  OPINION AND ORDER

The Commissioner appears to propose a third method to meet his burden:  by attempting to extrapolate the likely testimony of a VE based on the DOT codes.  The Court is not aware of any cases in which courts have accepted this as a valid approach, and this Court declines to do so.

Moreover, the Court does not agree the harmless error standard applies.  The Court cannot confidently conclude that fully crediting the findings of Drs. Wimmers and Anderson would be inconsequential to the ultimate determination of whether Allen is disabled.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054-56 (9th Cir. 2006)(discusses application of harmless error in Social Security cases).

The ALJ failed to reasonably explain why he did not give any weight to the findings of the state-agency reviewing psychologists.  Accordingly, the ALJ's RFC assessment cannot be sustained.  In addition, there has not been any testimony from a VE based on hypothetical limitations that accurately reflect Allen's RFC.  Under these circumstances, it is appropriate to accept the improperly omitted findings as a matter of law and to remand to obtain a VE's testimony based on an accurate RFC assessment.  *See Hammock v. Bowen*, 979 F.2d 498, 504 (9th Cir. 1989).

**III. Vocational Evidence.**

Finally, Allen contends the occupations identified by the VE

require work activities precluded by her RFC, and, therefore, the ALJ relied on erroneous testimony from the VE.  It is, however, unnecessary to address Allen's final argument.  For reasons already stated, the ALJ must reevaluate Allen's RFC and obtain new VE testimony based on an accurate hypothetical.

Accordingly, the Court remands this matter for the purpose of permitting the Commissioner to reassess Allen's RFC, to obtain VE testimony based on a hypothetical that accurately reflects all of Allen's functional limitations, and to address such other matters as the Commissioner deems appropriate.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 8th day of January, 2008.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


19 -  OPINION AND ORDER